## Gratz *versus* Hoover.

1. The marks on the ground of an old survey, indicating the lines originally run, are the best evidence of the location of the survey, and if any evidence of such lines exist, it should be referred to the jury.

2. Where a survey returned called for others on three sides, and on the fourth for J. H. *or vacant*, there being no evidence given that the line on that side was run, it was not error for the court to charge the jury that the return was equivocal, or indicated nothing more than that the line on that side was left open or undecided upon by the surveyor.

3. Where a question existed whether the larger part of a tract of land lay in Centre or Clearfield county, which were there bounded by the Mushannon Creek, it being the usage to tax lands in the county in which the greater part of the tract was situate, the official book of the treasurer of Centre county was evidence to show that the tract in question was *not* returned for taxation in Centre county, although other tracts in the same lot of surveys were so returned, the taxes on the tract in question having been paid by the claimant in the county of Clearfield; and especially, when taken in connection with the deposition of the treasurer of Centre county, that the present claimant had furnished to him a list of his lands *in Centre county,* in which the tract in question did *not* appear.

ERROR to the Common Pleas of *Centre county.*

Ejectment by John T. Hoover, against Jacob Gratz and Joseph Gratz, for a tract of land, situate partly in Snowshoe township, Centre county, and partly in Morris township, Clearfield county, containing 406 acres or thereabouts.

This action was in the nature of an appeal from a decision of the board of property, and was brought in obedience to the directions contained in the 11th section of the act of 30th April 1792: *Dun.* 1st ed. 146. On the 16th day of August 1849, a warrant was granted to John T. Hoover (the plaintiff below) for " four hundred acres of land (unimproved) adjoining land surveyed on warrant in the name of William McPherson on the south, and on the north, east, and west, by lands of Joseph Gratz and brothers, situate partly in the county of Clearfield, and partly in the township of Snowshoe on the Mushannon creek." In pursuance of this warrant, a survey of 406 acres and allowance was made October 4th 1849. On the 12th of October 1849, Jacob Gratz, on his own behalf and as attorney of Joseph Gratz, entered a *caveat* against the acceptance of this survey, alleging that the land applied for was not vacant, but owned by Jacob and Joseph Gratz. A hearing was had before the board, on the first Monday of January 1850, and it was decided that the surveys and patents claimed by the Gratz's covered the land in dispute, and the survey of Hoover was placed upon the rejected files. This decision seems to have been made 7th January 1850. On the 23d of February 1850, this suit was brought. At August term 1850, the plaintiff moved for judgment for want of an appearance, *sec. reg.* The

[Gratz v. Hoover.]

motion was entertained, and ordered to be placed on the argument list for adjourned court, and on the 9th of September the motion was taken up, when Mr. *Hale* appeared for defendants *de bene esse*, and at his instance a rule was granted to show cause why the service of the writ should not be set aside.   On the 14th of September, after argument, the court discharged the rule, dismissed the plaintiff's motion for judgment, and the defendants appeared by their counsel and pleaded " not guilty."   On the trial, the *plaintiff* relied on the title already stated.

The defendants alleged that the land in dispute was covered by a survey in the name of Clement Stocker, the title to which was in them.   There being no dispute about the paper titles of the respective parties, the only question in the cause was the proper location of the Stocker survey; whether it covered the land surveyed upon the Hoover warrant ?   This was a question for the jury under the evidence ; but the plaintiffs in error complained that the court erred in their instructions to the jury, in not giving to the calls for adjoiners, in the returns of the Stocker survey, a sufficient degree of conclusiveness.

The Stocker tract is one of a block of fifty surveys which were made in pursuance of an application entered by Aaron Levy on the 3d of August 1792, for 20,000 acres of land.   The surveying of this block of surveys, known as " the Levy lands," seems to have been commenced on the 21st of June 1793, and to have been continued until the 26th, when the work was completed.   These surveys are all laid so as to adjoin each other, and bounded by parallel lines crossed by other parallel lines, so as to throw each tract into a rectangular form, and make the contents equal.   Clement Stocker, according to the official draft, is an exterior tract, and occupies the north-east corner of the block.   On the north-east side of and adjoining this body of Levy surveys, another block of surveys was located in 1792, known as the Wallis lands, three of the exterior tracts of which, and which were alleged by the *defendants* to adjoin the Levy lands, were surveyed on warrants in the name of John Harris, Henry Harris, and Benjamin Harris.   But the *plaintiff* contended that these tracts do not adjoin the Levy lands, but that, on the contrary, a vacancy was left between them, which he had a right to apply to his warrant of 1849, and this state of facts he undertook to establish by proof of the actual condition of the *marks upon the ground*.   The defendant claimed that the Stocker survey adjoins the surveys in the name of John Harris and Henry Harris; and if this were so, then the Stocker survey would cover the vacancy claimed for the Hoover warrant.

Joseph F. Quay, an experienced surveyor, testified that at the instance of Mr. Gratz, and under the guidance of a draft furnished by him, he surveyed the Levy lands in 1834—that he found them well marked upon the ground—that the leading warrant (Robert

Morris) corresponded with the location as indicated by the return of survey, it being designated by such permanent and distinct marks as could not be mistaken—that in running the line bounding Clement Stocker on the east, and which is an old, well-marked line, and common to several surveys of the block, he ascertained that the Stocker tract did not adjoin Henry Harris by 198 perches, and that he blocked the east line of the Stocker tract, which was parallel to the line of Henry Harris, and at 198 perches distance from it, and found that the line counted to the date of the survey of Stocker. He further testified that if the block were so moved as to make Stocker adjoin Henry Harris, it would throw the intersection of the Mushannon with the Indian Path entirely off the leading warrant, and thus deprive it of marks which clearly identify and distinguish the Robert Morris survey. He further swears that if Stocker were made to adjoin John Vaughan, Paul Cox, Henry Harris, and John Harris, which would be placing it in its official connection, it would then contain more than 1000 acres, whereas by the return of survey it contains but 433 acres and 153 perches. Mr. Green corroborated Mr. Quay, and further stated that he examined whether there were any marks on the ground which would throw Stocker out of its official connection with Cox and Vaughan, and found none. Wm. Harris was examined, who, on behalf of the defendants testified that he never examined this block of Levy lands with a view to the proper location of the Stocker tract. He said the Clement Stocker must be located according to the official draft and the stream, so as to join the John Harris and Henry Harris, and having regard to the marks on the ground, he would say the same, because he found the line of Henry Harris and John Harris just where Mr. Quay says he found them; that there was no dispute about them; and there he found a line from the maple to the Mushannon Creek, counting to date of survey, the line between Cox and Stocker.

That the John Vaughan was so far west as not to be reached by Clement Stocker. There would be vacant lands according to lines of official survey.

Cross-examined:—Never located Robert Morris or any of this body; did not examine the W. O. corner of Mr. McPherson, and my location of Clement Stocker would be 200 rods east of that corner. If Stocker were to be fixed by the adjoiners, it must go to Paul Cox and John Vaughan; but the natural marks decide its location beyond a doubt.

The warrant to Clement Stocker was dated 3d August 1792, for 400 acres, adjoining John Vaughan, 26th June 1793; survey calls for Paul Cox on south, Henry Harris on east, north *John Harris or vacant*, and John Vaughan on west.

8th May, 1837, patent to Joseph Gratz, Jacob Gratz, and Benjamin Gratz.

[Gratz *v.* Hoover.]

The court, *inter alia*, instructed the jury that if they believed the east line found and blocked by Green and Quay, to be the line of the Stocker tract, then the actual marks as found on the ground, must control the calls for adjoiners as indicated in the return of survey.

The charge of WOODWARD, J., was as follows:—The plaintiff took his warrant on 16th Aug. 1849, for land as vacant, which defendants then claimed, and had long claimed, and still claim as their property, under and by force of a warrant and survey of 1793, in the name of Clement Stocker. The burthen of proof is on the plaintiff. A body of surveys are found in the land-office, calling for each other as adjoiners, and the whole claiming to adjoin an older body ; the plaintiff has undertaken to satisfy a jury that between these bodies of surveys, professing to adjoin, there is a considerable strip of vacant land, open to his warrant of 1849. The presumptions are all against him, and are to be overcome only by full and adequate proof. It is a question of location. What is the proper location of Clement Stocker ? If it be located where the plaintiff places it, there would seem to have been vacant land where he laid his warrant. If it be located where the defendant insists it lies, there was no vacant land for the plaintiffs' warrant, and the verdict of the jury would be for the defendant.

This is a question of fact, and belongs exclusively to the jury to decide. I may, however, state a few general principles which affect questions of location, and which never should be lost sight of by a jury, when they have to deal with such a subject.

1st. The artificial marks on the ground constitute the survey, and where they are found and verified, they are the highest proofs of location.

2d. Subordinate, but very important evidence of location, are natural objects, especially streams of water ; and adjoining surveys called for, and where location is not questioned.

3d. Returns of surveys into the land-office as adjoining, permitted to remain there for 21 years and upwards, raise a conclusive presumption of an actual survey somewhere, and afford evidence of location which, in the absence of other proof, may determine the question.

4th. The location of a tract of land, which is one of a body of surveys calling for each other, may be determined by fixing any one of the body, whether the leading survey or another, and then laying the rest as returned into the land-office.

The plaintiff alleges that the actual lines, as marked on the ground and found remaining, show that the calls of Clement Stocker for John and Henry Harris are inaccurate and should be disregarded. If the jury are satisfied of this, the cause is with the plaintiff, for the defendant must be stopped by the actual lines on the ground. Here is the main point of the case, and the tes-

[Gratz *v.* Hoover.]

timony of Quay, and Green, and Harris is to be carefully weighed as bearing on this point.

But the defendant insists, that though the lines of Robert Morris, and of the other tracts of this body, may be found as claimed, yet if marked lines or corners be not found on Clement Stocker, to control its peculiar position, it must be permitted to go to the adjoiners called for. This proposition is correct with only one qualification, and that is, that in pushing Clement Stocker to its adjoiners you do not *dislocate* any other tract of the body of which it is part. Clement Stocker is one of a body of surveys, and while its calls must, if possible, be all answered, yet we must not forget that it maintains on the ground certain relations to other tracts, and the rights of property in them are not to be disturbed, and a scene of universal litigation introduced, merely to satisfy one of the calls of Clement Stocker. But if, unrestrained by marks found on itself, Clement Stocker can be made to adjoin Henry and John Harris without affecting the fixed location of the other tracts with which it is associated, let it go to them. With this necessary qualification, the defendant's point is affirmed.

Is the line which Quay and Greene found marked on Clement Stocker, its eastern boundary? Was that line run and marked as part of the survey of the tract? Their testimony founded, in examinations of the whole body of fifty surveys, inclines the mind powerfully to an affirmative conclusion, and if the jury are brought to it, their verdict will be for the plaintiff.

But Mr. Harris's testimony and highly respectable opinion, the maple corner common to Henry Harris and Clement Stocker, the Tompkins surveys, the returns into the land-office, and the lapse of time, together with the waters as described by him, tend strongly to the locating of Christian Stocker where the defendant has always claimed it to be. It is to be regretted that Mr. Harris did not make a more general examination of this body of surveys. This would have enabled him to speak more confidently as to the line which Quay and Green found on the ground, and which the plaintiff insists is the eastern boundary of Clement Stocker.

The jury will take the drafts of the surveyors and their testimony, and if they believe the marks on the ground to locate Clement Stocker so as to leave vacant land between it and the Harris surveys, they will find for the plaintiff. If they do not, they will consider all the other matters that have been pressed on their attention as tending to fix this tract. Henry Harris being an older warrant, *and whose location is conceded on all hands*, Clement Stocker, if not restrained by marks of an actual survey on the ground, must go to it and adjoin it as called for. I cannot say the same as to John Harris, for the call of Clement Stocker on that side is for John Harris or vacant land, an equivocal call, which under the circumstances of the case and in respect to the

question before the jury, is indecisive. It indicates nothing more *than that the line on that side of Clement Stocker was left open;* and there is no other evidence before the jury that tends to prove that it was run.

To which the counsel of both parties excepted.

Verdict was rendered for the plaintiff.

As to treasurer's book and the deposition of treasurer, see the opinion of ROGERS, J.

*A. G. Curtin,* for plaintiff in error.—The location of the Clement Stocker tract is, as the court below properly said, the important question in the cause. He contended that the court erred in not instructing the jury that, as there was no evidence whatever of any marks on the ground to restrain the Clement Stocker tract from going to its call on the north, viz. John Harris, a well-known tract, that there was therefore no vacant land between these tracts upon which to locate the plaintiff's warrant in 1849, and consequently, as to so much of the plaintiff's survey, as lay between the Clement Stocker and the John Harris surveys, there must be a verdict for defendants.

We think there was no sufficient evidence of marks upon the ground to restrain the Clement Stocker from going to its call on the east, viz. Henry Harris, also a well-known survey. The only evidence upon their point is, the testimony of Mr. Quay, of a line running from a white oak, supposed by him to be a corner of the Paul Cox, Sharp, and Delaney tracts.

He says he found this line running past the end of the Clement Stocker, but he found no corner whatever below the white oak, nearly a mile from Clement Stocker. Now we do not think this is such evidence of marks upon the ground as should separate the surveys that call for each other, and have been so returned for upwards of fifty years in the land-office. The court ought to have told the jury, that in order to contradict this return of survey, acquiesced in for more than fifty years, and presumed to have been made as returned, evidence of the most *undoubted character* of marks on the ground, made at the time, and made for this survey, must be adduced to justify a separation of the tracts; and that the evidence in this case on the Henry Harris's side, was not of that character to justify such a conclusion.

The court endeavor to overcome the defendant's position, that the Clement Stocker must adjoin the John Harris survey, by saying that the call upon that side is equivocal, being for John Harris or vacant land. There would seem to be no force in this, when the John Harris survey is actually found and located upon that side of the Stocker survey. The call being for John Harris or vacant land on that side, the true meaning is, that if the John Harris survey is really located on that side, it becomes then a certain call,

[Gratz *v*. Hoover.]

and they must adjoin, and so all the drafts returned to the land-office show it to be.

The surveys of Clement Stocker and John Harris, it appears, were made at different times and by different persons, and it is probable the surveyor who located the Stocker survey was not certain of the location of the John Harris survey; but that he intended to adjoin that survey on that side, is manifest, and so returns it to the land office.

Norris *v*. Hamilton, 7 *Watts* 93; Neiman *v*. Ward, 1 *W. & Ser*. 69; Hall *v*. Turner, 4 *Barr* 245; Schnable *v*. Doughty, 3 *Barr* 393.

*McAllister*, *Burnside*, and *Linn*, for defendant in error.—The treasurer's book was evidence, and the purpose for which it was offered was proper. The defendants claimed that the Stocker tracts were located principally on the east side of the Mushannon Creek, which formed the boundary between Centre and Clearfield counties, and while other surveys belonging to the Levy lands, were taxed in Centre county, the Stocker tract was not taxed there. It was evidence bearing upon the point in dispute, being a state of things somewhat under the control of the defendants, and was therefore properly admitted for what it was worth.

The court were right in saying that the call for the John Harris tract being *equivocal*, was not conclusive of the location of Clement Stocker, even where marks are not found restraining it short of John Harris. The return of the surveyor is only conclusive of what it contains, and not of what it does not pretend to assert: Hall *v*. Powell, 4 *Ser. & R*. 162; Phillips *v*. Sheaffer, 5 *Ser. & R*. 215; Walker *v*. Smith, 2 *Barr*. 43; Hall *v*. Tanner, 4 *Barr* 244; Henry *v*. Henry, 5 *Barr* 447; Schnable *v*. Doughty, 3 *Barr* 393.

The opinion of the court was delivered June 2, by

BELL, J.—Of the thirteen supposed errors assigned in this record, but four have been pressed upon our attention with any show of confidence. Of these, three present but a single point, and may therefore be considered together.

The leading question in the cause was as to the proper location of what is called the "Clement Stocker" tract, in the block of surveys made under the warrant issued on the application of Aaron Levy, in 1792. The survey of that tract calls for, as conterminous, the tracts returned in the names of Henry and John Harris, and the court instructed the jury that if unrestrained by actual marks of survey found upon the ground, the "Clement Stocker" must be permitted to extend to the surveys called for as adjoining, unless by so doing the relative position of the other tracts of the block would be disturbed and deranged; that the "Henry Harris" survey being under an older warrant, and having a conceded location, the tract in dispute must be taken as adjoining it, if this pre-

[Gratz *v.* Hoover.]

sumption was not contradicted by ascertained existing marks of the original survey; but that, on the other side, the call being for "John Harris" or *vacant land*, it was equivocal and indecisive, and indicated nothing more than that the line of the survey on that side was left open.   The plaintiff in error complains of this portion of the charge as not being sufficiently favorable to him.   He thinks there was no adequate evidence of marks on the ground to be left to the jury as restraining the survey on the "Henry Harris" side, and as on the north the "John Harris" was found and indisputably fixed, the call ceased to be equivocal; wherefore the instruction should have been that in the absence of restraining marks found on that side, the jury was bound to. accept the southern line .of the last-mentioned tract as the true boundary of the one in controversy.   But in this we cannot concur.   Notwithstanding the long acquiescence in the drafts of surveys returned to and filed in the surveyor-general's office, it is undoubted that actual indications of the lines originally run on the ground are the best evidence of the true location sought for ; and as there was, to say the least of it, some proof of such indications in the surveyor's marks testified to by Quay and Green, the court had no choice other than to submit to the jury what was properly matter of fact for its determination.   To the other branch of the objection, the answer is found in the obvious meaning of the surveyor's return, that although he was aware a tract had been located in the immediate neighborhood in the name of John Harris, he had not taken upon himself to ascertain exactly where that tract lay.   It might join the "Clement Stocker" on that side, or the land there might be vacant.   This was the interpretation given below, and we think the correct one.

The other exception principally urged was that taken to the admission of what is known as the book of the treasurer of Centre county, containing lists of unseated lands situate in that county liable to taxation.   The defendant below claimed that the Stocker tract was situate principally on the east side of the Mushannon Creek, which there divides Centre and Clearfield counties; while the location assigned to it by the plaintiff below threw the greater portion of it to the west side of the stream.   It seems the custom in that district of country is to levy the tax of unseated tracts of land in that county in which the larger part of it may be found to lie.   In this discussion as to locality, it became of importance to show in which of the counties the larger portion of the disputed tract actually is.   As one means of making this manifest, the plaintiff below offered the deposition of the treasurer of Clearfield county ; but it was objected, the best evidence of the unseated lands returned in Clearfield for taxation was the treasurer's book.   The court was of this opinion, and accordingly rejected the deposition. After this, the book of the treasurer of Centre, being duly proved,

[Gratz *v.* Hoover.]

was received, to show the Stocker tract was not returned for taxation in Centre, although most of the other tracts of that survey were so returned; the former, with three others, having in fact been transferred from Centre to Clearfield. It is objected that, at best, this was the work of the treasurer himself, without reference to the owner, whose interests were therefore not liable to be affected by it. But we cannot admit this transfer of his lands for the purposes of taxation was a subject with which the owner was wholly unconnected. By the act of March 1806, it is made the duty of the owners of unseated lands to return a statement of them to the commissioners of the proper county; a duty to which it is not to be doubted the Messrs. Gratz had given their attention. It is not to be supposed that of their own mere motion the commissioners or treasurer of Centre would have assigned these tracts to Clearfield, and as the owners had regularly paid the taxes assessed upon them, it cannot be questioned they were cognizant of the fact. Indeed, I find in the paper-book of the plaintiff in error, the deposition of John G. Lowry, taken after notice, in proceedings relative to the tracts, before the board of property, and read on the trial of this cause. Mr. Lowry was treasurer of Centre county from 1829 to 1843, and also in the years of 1846 and 1847. He testified he presumed the transfer of the four tracts from Centre to Clearfield was made in pursuance of directions from Jacob Gratz; that no taxes for these four tracts had been paid in Centre since 1835; and that Mr. Gratz had furnished to the witness, as treasurer, a corrected list of their lands in Centre for the years 1848 and 1849, in which the Stocker tract did not appear. With this deposition, it will not be questioned the treasurer's book was properly received, and without it, I think it was good evidence, under the circumstances, of the fact sought to be proved.

The remaining errors, but faintly pressed on the argument, are sufficiently answered by the printed remarks submitted for the defendant in error, except the tenth, which is not there noticed. It avers the court erred in refusing to set aside the service of the writ of summons issued in this case. Were this now assigned as error, the record presents no ground upon which the court could with propriety have interfered with that service. The sheriff's return is regularly made of a regular service, and there is absolutely nothing to contradict it or to call it into question. As for the bill of exceptions signed on the hearing of the rule to show cause, because of the rejection of Sheriff Musser's testimony, by which it was intended to contradict the return, it is enough to say it is a mere nullity. The notion of an exception to evidence on a preliminary inquiry is indeed novel.

Judgment affirmed.