[Pruner *v.* Brisbin.]

## Pruner *et al.* versus Brisbin *et al.*

1. Where several tracts of land have been surveyed in a block and returned to the land-office, the lines and corners marked upon the ground in any part of the block are to be considered as belonging to each and every tract of which said block is composed. If sufficient lines and corners thus marked can be found, they determine the location of the whole block and of every tract in it without regard to the calls for adjoiners or for waters, if such calls conflict with the lines actually run upon the ground and returned.

2. The calls in a survey for waters, such as springs, ponds and streams, must be considered in determining its location. But if the surveyor has made a mere chamber survey, the calls for such waters constitute but slight evidence of their existence.

3. The location of a survey duly returned to the land-office must be determined by its own marks on the ground, not by marks found upon the ground which were made prior to such survey, or by the calls of subsequent surveys.

4. In ejectment for a tract of land, the location of which is disputed, the testimony of surveyors who went upon the ground many years prior to the inception of a party's title and there found the lines and corners of a block, whereof said tract is a part, actually marked upon the ground, is clearly admissible, and is moreover of great weight.

June 1st 1881. Before Sharswood, C. J., Mercur, Gordon, Paxson, Trunkey, Sterrett and Green, JJ.

Error to the Court of Common Plea of *Centre county:* Of May Term 1881, No. 11.

Ejectment, by Edward J. Pruner and Jacob Burley against Hannah E. Brisbin *et al.*, heirs-at-law of Dr. D. Houtz, to recover a tract of land in Woodward township, Clearfield county, on which the town or borough of Houtzdale in part now stands. The action was brought in Clearfield county, and was removed to Centre county.

On the trial, before Orvis, A. L. J., the principal question of fact was as to the actual location of a block of surveys of July 1793. The plaintiffs claimed title to the land in dispute by virtue of a warrant granted to them in October 1859, and survey thereon. The defendants showed a good title to several tracts of the above-mentioned block of July 1793, and alleged that they covered the land for which the plaintiffs' warrants had issued in 1859. The defendants admitted that had the actual location of the block of 1793 been made on the ground in accordance with the calls of the leading warrant of said block (the Cas per Haines, which called to adjoin two surveys of an older block

[*Pruner v.* Brisbin.]

of 1784, the location of which is undisputed) their title would not cover the land in dispute.   But they claimed that the marks upon the ground showed that the original surveys in 1793 located the block the width of two tracts further to the south, thereby covering the land in dispute.   The plaintiffs claimed that the block was actually located in 1793 according to the calls of its leading survey, and that, by consequence, the land in dispute remained vacant until they took it up in 1859.

In the accompanying diagram the block marked " July 1793," is shown upon the location as claimed by the plaintiffs. The dotted lines show where the southern portion of the block would be according to the location claimed by the defendants. The interferences which this latter location would involve with older surveys are not material to this case.

The testimony showed that marks of 1793 had been found.

[Pruner *v.* Brisbin.]

on the ground on both the southern lines claimed respectively by plaintiffs and defendants. The line claimed by the defendants was, however, much more distinctly marked than that claimed by plaintiffs, where no original corners or witnesses could be found as early as 1822. The plaintiffs' theory was that the surveyor in 1793 began to locate the block on the southernmost (dotted) line, but, discovering his mistake, abandoned that line, and marked the true southern line, and other lines of the block, by reference to the correct location of the leading survey, as fixed by its calls for the older and well-known surveys of 1784. The defendants, on the other hand, claimed that the line alleged by plaintiffs to be the southern boundary line was, in fact, an interior division line between surveys in the block. No marked line of 1793 was found to indicate the northern boundary of the block, with reference to either the northern or southern location. The marks of several younger surveys of 1794 were, however, found on the northern line, as shown in the diagram.

The defendants presented, *inter alia*, the following points:

6. The calls of the surveys of 1794, or of younger date, or the work found upon the ground younger than 1793, cannot affect the location of the block. It must be located by its own marks in the form in which it was returned to the land-office. *Answer.* We affirm this point. The location of the Drinkers, Barton, and other surveys of 1794 can have *no weight* in determining the location of these surveys in 1793. You can locate a younger survey from an older one, but not an older from a younger.

9. If the jury believe the testimony of the defendants' witnesses, that the hemlock sapling, the locust, the hemlock, the hickory, the birch, and the maple on the one line; the white-oak, the double sugar, the hemlock, the pine, and the hemlock on the other line, and the maple and the pine on the western end of the Benjamin Johnson as defendants lay it, were on the ground marked as corners, dating to 1793, with lines to and from them of the same date corresponding with the thirteen tracts, these corners and lines constitute the survey, control the call of Casper Haines for the white oak and surveys of 1784, and the verdict must be for the defendants. *Answer.* We affirm this point.

10. In determining the location of the block of thirteen surveys the jury is to be guided by the following rules:

First. The artificial marks on the ground constitute the survey and are the highest proofs of location. *Affirmed.*

Second. The next most important evidence of location is natural objects, especially streams of water. *Affirmed.*

Third. In the absence of both of them, *and then only*, adjoining surveys called for are to be resorted to.    *Affirmed.*

Fourth. The location may be determined by fixing *any one* of the blocks, whether the leading survey or another, by the marks on the ground, and then laying the rest in their order as returned into the land-office.    *Answer.*    This would be true if lines and corners were found for only one tract in a block.  But if other lines and corners are found belonging to the block of surveys, they must all be considered in determining where the block·was located.

11. The undisputed testimony of the surveyors of both plaintiffs and defendants establishes the fact that the lines on the ground, blocked back to 1793 and corresponding with the thirteen surveys, interlocked with the older surveys of Phillips ; and therefore no vacancy exists upon which plaintiffs could lay their warrants, unless the jury *is clearly* satisfied that these lines and corners on the ground were obliterated or abandoned by the surveyor who made the return, of which the interference and the location of junior surveys are not sufficient evidence.    *Answer.* We affirm this point, if the jury find the facts as therein stated.

The court charged the jury, *inter alia*, as follows :

" The surveys constituting a *block* are not to be treated as separate and individual surveys, and each tract located independent of the rest, by its own individual lines or calls, or courses and distances ; but such surveys are to be located together as a block, or one large tract.   Surveys made and returned as a block, must be located upon the ground in a block; and that whether their lines can be found upon the ground or they were chamber surveys.   If lines and corners made for such a block of surveys can be found upon the ground, this fixes the location of the block even to the disregard of the call for adjoiners or natural monuments.   The lines and corners found upon any part of a block of surveys belong to each and every tract of the block, as much as they do to the particular tract which they adjoin.

" If a younger block of surveys calls for an older block, and no lines or corners can be found, made for the younger block, the proper mode of determining the location of such younger block is to locate the older, and then locate the younger adjoining it, according to its calls.   If more·than one older tract or block is called for, and the younger block cannot be located so as to answer all of its calls, that location must be selected for the younger which will answer most of its calls, and at the same time best preserve the general configuration of the block.

" If, however, the lines and corners of the younger block can be found upon the ground, these must control the location of the block, even if by so doing you have to disregard entirely its

calls for older tracts or blocks. Whenever there is a discrepancy between the lines run and marked upon the ground and the calls for older surveys or natural monuments, the latter must always give way and the lines and corners themselves must govern the location. This rule is equally applicable to individual surveys, and to blocks of surveys, and it is the duty of every jury in determining the location of surveys to remember, and apply it.

"The calls in a survey for waters, such as springs, ponds, and streams, must be considered by the jury in determining the location of the survey. The value of this evidence, however, depends upon circumstances. If the surveyor was not upon the ground, but plotted the survey in his office, he could have little accurate knowledge of the location of waters, and his call for them would be but slight evidence of their existence. If, however, the lines of the survey were run upon the ground, and crossed streams of considerable size, we would expect such streams to be noted upon the return of the survey with reasonable accuracy. The courses of streams through the interior of tracts, are seldom found accurately laid down, for the reason that the surveyor did not meander them, and could not, therefore, accurately give their different courses. Where some of the lines of a survey were run upon the ground, and others not, waters purporting to cross the lines not run are seldom found to be as accurate as those crossing the lines which were run. Where lines were not run upon the ground, the surveyors sometimes placed imaginary streams without any knowledge whether similar ones actually existed or not. · Even where lines were actually run upon the ground, crossing streams, and we find those streams accurately designated upon the tracts on one side of the line, we frequently find no streams at all upon the opposite side of the line ; although the stream which runs out of the one tract across the line, must necessarily run into the other. . . .

" These thirteen tracts having been surveyed and returned as a block must be located upon the ground as a block. No one tract, whether the Casper Haines or the Benjamin Johnson, can be arbitrarily located, disregarding the lines and corners found upon other parts of the block. All the lines and corners marked upon the ground and returned, must be considered in ascertaining the proper location of the block. If sufficient lines and corners can be found they determine the location of the entire block without regard to its calls for adjoiners or for waters, if such calls conflict with the lines actually run and returned.

" The question is not what the deputy surveyor who located these warrants ought to have done, but what did he actually do? Of course he ought to have so located these warrants as not to interfere with the older surveys already made ; but did

[Pruner *v.* Brisbin.]

he do it ? Wherever he ran and returned the lines of these surveys, whether entirely upon vacant land, or partly upon vacant land and partly upon older surveys, there they must remain for ever. If they interfered with older surveys when they were located and returned, they must remain there, although the result would be that the owner of these warrants would get no title to that portion of the land covered by the older surveys. . . . . " By this location the call for the 1784 surveys on the southeast of the Casper Haines would be fully answered, and no part of the block would interfere with the older surveys. By this location the southern line of the block would be north of the land in dispute, leaving it vacant and liable to be appropriated by the two warrants of the plaintiffs. We have said that this would be the proper, and in fact the only location which could be made of this block, if no lines for it were found run and marked upon the ground ; but if lines were run and marked upon the ground and returned for this block of surveys, these lines must control the location of the block and not the calls of the Casper Haines for the surveys of 1784.

" The first question of fact concerning the location of this block which you must determine, is, Were the lines of these surveys run and marked by the deputy surveyor in 1793 ? If they were, then they must determine the location of the block. About this first question there seems to be no room for dispute. All the surveyors who have been called agree that they find upon the ground marked lines counting back to 1793, running in the right directions and at the right distances apart to suit this block of surveys. We do not mean to say that all of the lines of every tract have been found; but that a sufficient number of lines have been found and identified, to fix the general location of the block. If you find this to be a fact you must resort to these lines and corners found upon them to determine where this block was located in 1793.

" The defendants contend that this block is located upon the ground so far southward as to interfere with the Phillips surveys of May and June, 1793. By this location the George Bickham and Jacob R. Howell tracts, which they own, cover the land in dispute. On the other hand, the plaintiffs contend that the block is located two tracts, or 460 rods, further north, and that by their location the block does not interfere with the senior surveys of 1793, and that the land in dispute is south of the southern line of this block. This is the main question in this case, and is a question of fact for you to determine under all of the evidence bearing upon it. . . .

. . .. " Much has been said concerning the waters called for, upon this block of surveys. If you take the separate offi

cial draft of the Jacob R. Howell, you will find a stream repre-
sented as flowing eastward from it into the Casper Haines.   If
you take the separate official of the Joseph Matlock you will
find a stream represented as crossing its southern boundary,
flowing out of the Casper Haines into the Matlock.   Yet if you
take the separate official of the Casper Haines, no water at all is
called for, as being upon it.   The four tracts surrounding the
William Sheff, each call for water flowing into or out of the
Sheff, and yet the separate official of the Sheff shows no streams
at all.   This shows the carelessness with which the waters are
called for or represented upon these surveys.

["The Jacob Cox and Henry Shaffer, the two northern tracts
of this block, have streams represented crossing their northern
lines, and flowing northward.   The plaintiffs contend that by
adopting their location these calls for streams will be answered
—that streams are there upon the ground flowing northward
into Clearfield Creek.   But if the defendant's location be
adopted, in order to have streams flowing northward out of the
Cox and Shaffer, they would have to flow over a high hill.   If
the northern line of these two tracts was run on the ground by
the surveyor who made the return, these calls for streams flowing
northward would be important.   But if this line was merely
plotted, and not run upon the ground, the calls for these streams
should have but little weight in determining the location of the
surveys.   Whether the northern or southern location be adopt-
ed, no surveyor has found the northern line of the block upon
the ground.   The fact that the Jacob Cox calls for a post at its
northeastern corner, would indicate that this line had not been
upon the ground.   If it was not run, the calls for waters cross-
ing it are not important or significant."]

Verdict and judgment for the defendants.   The plaintiffs
took this writ, assigning for error the answers to the points
above quoted, and that portion of the charge inclosed in brack-
ets.

*James A. Beaver* and *George A. Jenks*, for the plaintiffs in
error.—The court erred in charging that the fact that the Jacob
Cox, one of the two northernmost surveys of the block, calls for a
post at its northeastern corner indicates that the northern line
had not been run on the ground.   We admit that it indicates
that the surveyor was not at that particular corner, but as the
other calls in the northern line, two miles in length were for liv-
ing wood, the call for a post at its extremity is no indication
that the line, or the greater portion of it, was not run on the
ground.   It was a vital point for us to establish the northern

[Pruner *v.* Brisbin.]

line of the block, and the court by so charging virtually took that question from the jury.

The court also erred in charging that the surveys of the following year, 1794, could have " *no* weight" in determining the location of the 1793 surveys : Clement *v.* Northumberland Coal Co., 6 Norris 293 ; Northumberland Coal Co. *v.* Clement, 10 Weekly Notes 321 ; Kennedy *v.* Lubold, 7 Norris 246.

The call of the leading survey of the block for an older and well known survey, should have had a controlling effect, where there was a conflict between the marks on the ground and the natural monuments. The court also erred in the instruction given on the subject of the weight to be attached to the call for streams ; and further, in affirming the eleventh point, that the verdict should be for defendants unless the jury were " *clearly* satisfied" that the surveyor obliterated or abandoned the lines and corners marked on the southern line as claimed by defendants.

*Wallace* and *Alexander* (*Krebs* and *Bower* with them), for the defendants in error.—A subsequent survey cannot control the lines of a former survey : Bellas *v.* Cleaver, 4 Wr. 260 ; Carbon Imp. Co. *v.* Rockafeller, 1 Cas. 49 ; Mahon *v.* Duncan, 1 Har. 459.

Mr. Justice STERRETT delivered the opinion of the court October 3rd 1881.

The controlling question of fact for the jury in this case was as to the true location of the four warrants under which defendants derive title. In July 1793, these warrants together with nine others were located in a block, and patents for each of the tracts were afterwards granted to Richard Peters. The title under which the plaintiffs claim is based on two warrants, issued to them respectively in 1859, and surveys made in pursuance thereof in October of that year. If, as they contend, the land in controversy was then unappropriated they were clearly entitled to recover, but, on the other hand, if it was included in the block of surveys made in 1793, it is equally clear the verdict was right. It was not denied that a survey of the thirteen tracts composing the block was made on the ground in 1793, but the dispute was as to where the warrants were actually laid. The location contended for by the plaintiffs is the width of two tracts, or four hundred and sixty rods, directly north of that claimed by the defendants. Which of these is the true location was, therefore, the cardinal question in the case. The manner in which this and other questions of a subordinate character arose, and the principles of law

2 OUTERBRIDGE—14

by which the jury should be governed in reaching a correct conclusion were so fully and clearly explained to them by the learned judge who presided at the trial that they could scarcely fail to have an intelligent understanding of the case.

They were instructed, *inter alia,* that the thirteen tracts having been surveyed in a block, and so returned, must be located upon the ground as a block; that neither of them can be arbitrarily located in disregard of the lines and corners found upon other parts of the block. All the lines and corners marked upon the ground and returned must be considered in ascertaining the proper location of the block. Those found upon any part of the block belong to each and every tract of which it is composed, and if sufficient lines and corners can be found they determine the location of the entire block without regard to its calls for adjoiners, or for waters, if such calls conflict with the lines actually run upon the ground and returned. The calls in a survey for waters, such as springs, ponds, and streams, must be considered by the jury in determining its location, but the value of such evidence must depend upon circumstances. If the surveyor, instead of going upon the ground and there running and marking the lines, merely plotted the survey in his office, little accurate knowledge of the location of waters, and his call he could have for them would be but slight evidence of their existence. It requires neither argument nor citation of authorities to show that the learned judge was clearly right in thus instructing the jury.

The plaintiffs have failed to furnish us with the testimony, as required by the rules of court. In so far, therefore, as it becomes material, we must be guided solely by such reference to the evidence as is contained in the charge of the court. Considering the assignments of error in connection with the charge, as a whole, and in the light of the facts as therein presented, we fail to discover any error that would justify a reversal of the judgment.

It appears that the two northern tracts of the block, the Jacob Cox and Henry Shaffer, are represented as having streams crossing their respective northern boundaries, and flowing in that direction towards Clearfield Creek, and that by adopting the location contended for by plaintiffs these calls will be answered by streams actually on the ground; but, if defendants' location, four hundred and sixty rods further south, be adopted, these calls are not answered. The plaintiffs regarded this as an important element in their case, and part of the charge relating thereto has been assigned for error. In calling the attention of the jury to the subject, the learned judge said : "If the northern line of these two tracts was run on the ground by the sur-

[Pruner v. Brisbin.]

veyor who made the return, these calls for streams would be important; but, if the line was merely plotted and not run upon the ground, the calls for these streams should have but little weight in determining the location of the surveys. Whether the northern or southern location be adopted, no surveyor has found the northern line of the block on the ground. The fact that the Jacob Cox calls for a post at its northeastern corner, would indicate that this line had not been run upon the ground. If it was not run, the calls for waters crossing it are not important or significant." When considered in connection with other portions of the charge, wherein the principles applicable to marks actually made by the surveyor and found upon the ground, calls for adjoiners, streams, etc., are clearly stated and explained, the instructions complained of were entirely adequate. It was left to the jury to say whether the northern line, which the streams are represented as crossing, was actually run upon the ground by the surveyor or not. If they found it was, the call for streams would be important. More than this the plaintiffs had no right to ask, especially in view of the significant fact stated by the court, that "no surveyor has found the northern line of the block upon the ground." In the absence of the testimony, or anything to show that this statement was not warranted by the evidence, we must accept it as an undisputed fact in the case. The other calls in the return of survey for the locust and the hemlock sapling on the northern line of the Jacob Cox and Henry Shaffer tracts were not entitled to much consideration if the line itself was not found on the ground by any of the surveyors.

In affirming defendants' sixth point, the jury was properly instructed that the block of 1793, as returned to the land-office, must be located by its own marks and not by calls of later surveys, or by marks found upon the ground younger than 1793; that the location of the Drinkers, Barton, and other surveys of 1794, could have no weight in determining the location of the block in question. The instruction thus given is clearly right, and not in conflict with the principle recognized in Kennedy et ux. v. Lubold (7 Norris 246), and other cases cited by the plaintiffs. In the first of these cases a question arose as to the admissibility of declarations made by two surveyors while professionally engaged, many years before, in the examination of monuments on the ground; and it was held that their declarations made at the time, as to the corners "found, blocked, and counted, were part of the res gestæ, and so far from being doubtful evidence, were competent, and always admitted when the transaction was old and the surveyor dead." This principle has no application to the facts of this

[Pruner *v.* Brisbin.]

case as they are presented to us. The other authorities cited in support of the second asssignment are also irrelevant to the question involved therein.

The defendants' ninth point was : " If the jury believe the testimony of defendants' witnesses, that the hemlock sapling, the locust, the hemlock, the hickory, the birch and maple on the one line ; the white oak, the double sugar, the hemlock, the pine, and the hemlock on the other line, and the maple and the pine on the western end of the Benjamin Johnson, as defendants lay it, were on the ground marked as corners, dating to 1793, with lines to and from them of the same date, corresponding with the thirteen tracts, these corners and lines constitute the survey, control the call of the Casper Haines for the white oak and surveys of 1784, and the verdict must be for the defendants." There was an abundance of testimony on which to base this proposition and justify the submission of the same to the jury. One of the witnesses referred to in the charge of the court, testified that over fifty years ago he ran the lines of the block of surveys in question, and spent about a week in trying to locate the thirteen tracts from the call of the Casper Haines for the Anderson white oak, but could find no lines or corners corresponding with that location. The same witness testified that he found the block well located by lines and corners on the ground, two tracts further south, and interfering very considerably with the Phillips surveys ; that he there found several living corners corresponding with the returns of survey, and constituting a majority of all the corners called for in the block. If this and other testimony of similar import was believed by the jury, the fact was conclusively established that nearly all the lines and corners, returned for the block of surveys in question, were actually found upon the ground which the defendants claim to be the true location. It matters not that these lines and corners were found many years ago, before the inception of the plaintiffs' title. The question is, Where was the block located in 1793? and the testimony of surveyors who went upon the ground for the purpose of ascertaining the lines and corners of the tracts composing the block, and there found the living line and corner trees is undoubtedly entitled to great consideration. The lines and corners thus established to the satisfaction of the jury, constituted the survey, controlled the call of the Casper Haines for the white oak and the surveys of 1784, and thus conclusively settled the vital question against the plaintiffs. It follows that there was no error in affirming the point, and the third assignment is not sustained.

There is no substantial error in either of the answers covered by the fourth and fifth assignments. The case appears to

[Stack v. O'Hara.]

have been well tried, and we find nothing in the record that calls for a reversal of the judgment.

Judgment affirmed.