# Jasper N. Culver, Appellant, *v.* George Hazlett.

*Trespass—Original titles—Survey—Best evidence—Question for jury.*

The lines actually marked on the ground constitute the survey in all cases whether a warrant call for another as adjoining or otherwise; the marks on the ground of an old survey indicating the lines originally run are the best evidence of the location of the survey and if the evidence of such lines exist it should be referred to the jury.

There is no reversible error where in an action of trespass the question turns on the true division line, between two tracts, as run, marked or indicated by the original survey, and the trial judge left the case fairly to the jury to say where the original lines were.

Argued Jan. 9, 1900. Appeal, No. 2, Jan. T., 1900, by plaintiff, from judgment of C. P. Luzerne Co., Jan. T., 1893, No. 365, on verdict for defendant. Before BEAVER, ORLADY, W. W. PORTER, W. D. PORTER and MITCHELL, JJ. Affirmed. Opinion by BEAVER, J.

Trespass to recover treble damages against defendant for cutting and converting to his own use ten trees of the value of $19.20, alleged to have been growing on plaintiff's land. Before DUNHAM, P. J., of the 44th judicial district, specially presiding.

The facts sufficiently appear in the opinion of the court.

The court charged the jury, inter alia, as follows:

[A great deal has been said in this case during the long time it has taken to take the evidence by counsel upon either side, and a great deal has been said in the argument to you, gentlemen, by counsel upon the various sides in their zeal which is entirely outside of the case, and therefore I desire to call your attention specially to what is in controversy in this case in order that you may know what you are disposing of and dispose of it intelligently.

The only thing that is in controversy in this case is as to whether the timber trees that were cut by George Hazlett, the defendant, were upon the land of Jasper N. Culver or upon the land of George Hazlett. The question of the southwest line of this survey down through between Jasper N. Culver and Mr. Turner, and where his buildings are, and where his orchard is, has nothing whatever to do in this case, and your verdict can-

not by a straw or feather's weight influence the determination of that question in any way. This is a lawsuit between Jasper N. Culver and George Hazlett, and your verdict can have nothing whatever to do with any controversy between Mr. Turner and Mr. Culver. It could not be used, it could not be referred to, and it is of no consequence. Neither is it of any consequence as to whether it includes the burying ground, or the church, or anything of that kind. The only question in controversy is, who was the owner of the land upon which these trees were cut, and that is all you will determine by your verdict in this case.] [9]

Verdict and judgment for defendant. Plaintiff appealed.

*Errors assigned* among others were (9) to portion of the judge's charge, reciting same.

*S. J. Strauss* and *John McGahren*, for appellant.—We have endeavored to reduce this case to a single question and it is this : Where the lines by which several adjoining owners have occupied their lands and limited their grounds during more than half a century or even during a period only sufficient to give perfect title under the statute of limitations and have made and accepted conveyances by such lines with a place of beginning in the several deeds at a recognized tree or corner during all this period, shall the unexpected discovery of the alleged fact that the tree marking the point of beginning was not the tree by which the survey of the original tract was made 127 years ago, destroy the quietness of a possession by the accepted lines? Martz v. Hartley, 4 Watts, 261.

A division line, although made by mistake, cannot be altered after thirty years' acquiescence by the parties.

Fences play an important part as to monuments of the title, giving effect to the statute of limitations, and after twenty-one years' peaceable possession, controlling even original lines of survey: Stoner v. Hunsicker, 47 Pa. 514.

An occupation up to a fence on each side by a party or by two parties for more than twenty-one years, each party claiming the land on his side as his own, gives to each an incontestable right up to the fence and equally whether the fence is precisely on the right line or not: Brown v. McKinney, 9 Watts, 565.

Where a vendor conveys by established landmarks, the subject of the grant will neither overrun nor fall short of them. The landmarks form the true boundary, the courses and distances serve merely to point to the place: Wood v. Appal, 63 Pa. 210; Cox v. Couch, 8 Pa. 147.

Evidence of a long continued acquiescence in the location of a tract is admissible though there be other evidence in the case showing it not to be the true location: Cramer v. Goodlander, 98 Pa. 353; Ralston v. Miller, 3 Ran. 44; 15 Am. Dec. 704; Craft v. Yeaney, 66 Pa. 210.

*P. A. O'Boyle* and *Edward A. Lynch*, for appellee.—In the last paragraph of counsel's history of the case, they say, "Shall lines which for sixty years have been run and accepted with the 'chestnut corner' as the place of beginning now be unsettled by a surveyor's claim by the lost and probably fabled corner of the peperidge?" There is no evidence in this case to justify this question, but there is for this one: "Shall the judgment of a jury and court, after a fair and impartial trial, be disturbed, that trivial and vexatious lawsuits may be kept up indefinitely?"

OPINION BY BEAVER, J., April 23, 1900:

Surveys of two tracts of land, containing 309 acres and eighty-eight perches and allowance each, were made October 24, 1772, upon warrants dated September 7, 1772, to John Sorber, Jr. and Thomas West, respectively. The lines of these tracts do not run directly east and west and north and south but for brevity and convenience will be so designated. The north and south lines are returned as being at right angles with those running east and west. The southern end of the division line of the two tracts where a black oak is called for in the return of survey is recognized and undisputed. The north and south lines of the two tracts are also undisputed. The division line, run at right angles with the southern line from the black oak, with proper variations, does not reach any marks upon the ground. Seven and six tenths perches west of its intersection with the northern line there are chestnut and poplar witnesses counting at the time of the survey about sixty-one years; eight and six tenths perches east there is a gum witness counting to

the date of the survey. There are no division fences nor any marks of any kind from the defendant's southern line to the northern line of these two surveys which indicate the claims of the parties claiming in accordance with these several surveys. There is evidence that Turner, who claims under the west survey, distinctly refused to recognize the line which terminates at the chestnut and poplar witnesses. Most of the distance between the lines last named is in woods and whatever fences are on the ground are to the east of the line running from the black oak to the gum witness, with the exception of a short span of fence which crosses this line diagonally and does not conform to any of the north and south lines referred to. The title under which the defendant claims is by a deed of Isaac Smith made October 20, 1831, to Nicholas Santee, in which the land conveyed is described as beginning "at an original corner of the tract at a post and stones." Three days after the date of this deed Nicholas Santee conveyed to Jacob Wolf a portion of the tract conveyed to him described as beginning at a post and stones, a corner of Manuel Turner. The location of the corner referred to in the deed of Smith to Santee and of Santee to Wolf became a controlling question in the case. If the corner to which the gum tree was a witness was the original corner and the one referred to in the deeds herein mentioned, the description would include the land upon which the timber cut, for which the action of trespass is brought, was growing. If the corner in these deeds was that to which the poplar and chestnut were witnesses, the land upon which the timber was cut would be excluded by the description in these deeds. The whole case, therefore, practically turns upon this one question.

In the lengthy trial in the court below the case was much complicated by a mass of testimony as to the line from the black oak northward between Gregory and Culver who claimed under the Sorber title and Turner who claimed under the West title. It was shown that along this line there had been maintained for many years a division fence recognized by both parties, but this terminates at Culver's northwest corner and does not continue further north. There is nothing whatever north of Culver's northern line to stop Turner's claim short of the true division line between the two tracts. The court very properly said, in its charge to the jury: "A good deal has been

said in this case by counsel upon both sides, about twenty-one years' possession up to a line and a great deal has been said about the southern line between the Turner and the Culver property and about the fences along there. That may establish the line between Culver and Turner down there where that fence had been for twenty-one years but it can have no effect upon establishing, a line different from where it was located by the parties and different from where it was located upon the ground in 1831 up opposite Turner and Mr. Hazlett, because those parties have nothing to do with what Mr. Culver and Mr. Turner did down on their part." If this had been recognized earlier in the course of the trial and the testimony relating to this portion of the line had been excluded, there would have been much less confusion in reaching a conclusion and a diminution of the great mass of testimony through which we have been compelled laboriously to wade, in order to reach an intelligent conclusion in regard to the case.

The plaintiff in his argument endeavors to reduce what is involved in the case to a single question which he states as follows: "Where the lines by which several adjoining owners have occupied their lands and limited their grounds during more than half a century or even during a period only sufficient to give perfect title under the statute of limitations, and have made and accepted conveyances by such lines with a place of beginning in the several deeds at a recognized tree or corner during all this period, shall the unexpected discovery of the alleged fact that the tree marking the point of beginning was not the tree by which the survey of the original tract was made one hundred and twenty-seven years ago destroy the quietness of a possession by the accepted lines?" If that proposition had been made in reference to the portion of the division line between the Sober and West tracts which bounds Culver's claim on the west and Turner's claim on the east, it would have been unquestionably sound and would have been entitled to an unqualified negative answer, but it is based upon false premises, so far as the portion of the line between Hazlett and Turner is concerned. As to that portion of the line there was practically nothing to limit the inquiry of the surveyors as to where the original survey was located. This question was fairly left to the jury. The well recognized principle that a survey consists

of what the surveyor did upon the ground at the time the survey was made, was clearly stated in the charge to the jury. As to what constitutes a survey, " The lines actually marked on the ground constitute the survey in all cases whether a warrant call for another as adjoining or otherwise:" Hall v. Tanner, 4 Pa. 244. "The marked lines govern in all cases:" Thompson v. McFarland, 6 Pa. 478; Thomas v. Mowrer, 15 Pa. 139. "The marks on the ground of an old survey, indicating the lines originally run, are the best evidence of the location of the survey and, if any evidence of such lines exists, it should be referred to the jury:" Gratz v. Hoover, 16 Pa. 232; Pruner v. Brisbin, 98 Pa. 202; Parks v. Boynton, 98 Pa. 370.

It is not claimed by either party that a line from the black oak run at right angles to the southern line of these tracts was the original division line between them. The plaintiff claims that the true corner is the one to which the chestnut and poplar are witnesses, these witnesses counting, as already stated, about sixty-one years. The defendant claims that the true corner is the one to which the gum, counting 122 years, or in other words to the date of the survey, points. This was the real question for the jury to decide and, that being determined, the courses and distances run by the surveyor from that point, as described in the deeds under which the defendant claimed, finished the survey of his claim. There was nothing upon the ground to limit the claim of the defendant short of the Wandell line on the east. This was a few perches beyond his distance from the gum witness but, as we understand it, his distance from the gum covered the land upon which the trespass was committed and it is, therefore, not necessary to determine whether, assuming the gum to be the witness to the original corner, as was evidently found by the jury, his distance would carry him to the Wandell line.

The counsel for the appellant in their argument speak of a " consentable line." This is a technical term, the basis of which is a dispute between adjoining owners and the compromise of such a dispute by a line agreed upon between them : Perkins v. Gay, 3 S. & R. 327. There is not a scintilla of evidence of such a line between the Sober and West surveys as held by the defendant and his adjoining neighbor Turner, respectively. Nor is there any evidence of a recognized or " claim-to " line, as it

is called in some localities, the foundation of which is adverse possession. As was said in Reiter v. McJunkin, 173 Pa. 84: " The maintenance of a line fence between owners of adjoining lands by their acts, up to which each claims and occupies, is a concession by each of the open, adverse possession by the other of that which is on his side of such division fence, which after twenty-one years will give title, though subsequent surveys may show that the fence was not exactly upon the surveyed line." The result of a trial between the present plaintiff and his neighbor Turner on the southern portion of the line in dispute was quoted in the appellant's argument, but it was determined by its own conditions and those conditions, do not exist in the present controversy. There is no evidence of such a line between Hazlett and Turner. The ground was open, no fence or other boundary in any way marked the claims of the respective parties, and the real question involved, as heretofore intimated, was what was the true division line of the Sober and West tracts as run or marked or indicated by the surveyor at the time when the surveys were made. All this was fairly left to the jury.

There was evidence of a cleared and fenced field at the southeastern portion of the land in dispute, which was occupied and farmed by the plaintiff, but there was no fence running north from this nor any line which would limit the claim of the defendant. In an ejectment by the plaintiff against the defendant, the former might recover the fenced and cultivated field if he was able to show such a state of facts as entitled him to recover under adverse possession, without in any way establishing title to the land north of it upon which the timber was cut. The question involved was really a very simple one, as we have tried to show. If error was committed in the course of the trial, it was in admitting testimony of the plaintiff which should have been excluded, the admission of which undoubtedly led to the assumption of the facts upon which the question propounded by the appellant as the only one in the case was erroneously based. We see nothing in the charge of the court which is not substantially correct. The question of fact involved was fairly submitted to the jury and, in our opinion, the judgment entered upon their verdict should stand.

Judgment affirmed.